**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ARTURO TINOCO, § | |
| Defendant-Petitioner, § | |
| § | No. 3:09-CV-1290-M (BF) |
| v. § | (3:07-CR-266-M) |
| § | |
| UNITED STATES OF AMERICA, § | |
| Plaintiff-Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Arturo Tinoco ("Petitioner" or "Tinoco") moves to vacate his sentence under 28 U.S.C. § 2255. The United States of America filed a response and Petitioner filed a reply. In an Amended Motion, Petitioner claims that he received ineffective assistance of counsel. The government opposes Petitioner's Amended Motion, contending that Petitioner fails to show deficient conduct or resulting prejudice.

**Background**

Petitioner pled guilty to two counts of possession with intent to distribute 50 grams or more of methamphetamine, each in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The District Court sentenced him to 229 months confinement and a five-year term of supervised release. Petitioner appealed, but the Fifth Circuit Court of Appeals dismissed Petitioner's direct appeal for want of prosecution. His section 2255 motion was timely filed on July 8, 2009. The government filed a timely response on September 18, 2009. On February 5, 2010, the Court granted Tinoco's motion to file an amended petition under § 2255, and directed the government to respond to the amended petition within 60 days of its filing. The government responded and Petitioner filed a Reply.

# Facts[1]

On July 20, 2006, officers with the Dallas, Texas, Police Department (DPD) observed a black Lincoln Town Car stopped in the middle of the street at the intersection of North Prairie and Reiger Avenues in Dallas, Texas. The officers observed a Hispanic male, later identified as the defendant, Arturo Tinoco (Tinoco), seated in the driver's seat of the vehicle. No one else was in the vehicle. Officers observed the defendant exit his vehicle, leaving the driver's side door open, and speak to another individual who had pulled up next to him in another car. Both vehicles were committing the traffic violation of blocking the north and south-bound traffic lanes in the 100 block of North Prairie Avenue.

Shortly thereafter, officers observed Tinoco enter his vehicle and drive northbound on North Prairie Avenue. Based on the traffic violation, officers conducted a traffic stop. The defendant did not have a valid driver's license and a records check revealed he had numerous warrants for his arrest out of Garland, Texas, and Farmers Branch, Texas. At that time, Tinoco was taken into custody. During a search of his vehicle, officers recovered a brown bag in the trunk which contained a clear bag containing approximately 323.6 grams of a crystal-like substance. This substance subsequently field tested positive for methamphetamine. Also inside the bag were $5,920 in U.S. currency and a police scanner which was monitoring the DPD Central Patrol Police Dispatcher. Laboratory analysis revealed this substance consisted of 322 grams of a mixture and substance containing 121 grams of actual methamphetamine.

On February 15, 2007, at approximately 2:58 a.m., a DPD officer observed a red 1996 Chevrolet Impala driving through various parking lots on Greenville Avenue, Dallas, Texas. The vehicle was traveling without a left headlamp, which is a traffic violation. The officer attempted to stop the vehicle for the violation, but the vehicle drove off as the officer activated his emergency equipment. The vehicle eventually stopped. Tinoco was the driver of the vehicle and there were no passengers. He was unable to produce a valid driver's license. A check of the defendant's name revealed his driver's license was suspended. At that time, the defendant was arrested.

A search of the vehicle was conducted during which a loaded Auto Ordinance Thompson, .45 caliber semi-automatic pistol was recovered, as well as 255 grams of a crystal-like substance which field tested positive for methamphetamine. Officers also recovered three cellular telephones, a scale, and a diamond ring. While Tinoco was sitting in the back seat of the squad car, he was able to remove his seatbelt and boots, open the vehicle door, and escape while handcuffed. A K-9 search of the area

---

[1] The following facts from Petitioner's Pretrial Services Report ("PSR") at ¶¶ 10-20 are set out in the government's response.

2

did not locate the defendant. Laboratory analysis revealed this substance consisted of 255 grams of a mixture and substance containing 64 grams of actual methamphetamine.

On March 17, 2007, two officers were working in an off-duty capacity at Club Purgatory located at 2208 Main Street, Dallas, Texas. One of the officers observed the defendant enter the club. The officer recognized Tinoco from previous contact with him and knew that he had outstanding felony warrants. The defendant was arrested at that time.

A search of the defendant revealed $1,924 in U.S. currency in his front left pants pocket. He also had a valet ticket in his pocket. The defendant advised the officers that he had driven to the club alone and had no one to whom he could release the vehicle. Club Purgatory does not allow the valet to store vehicles overnight; therefore, the vehicle was impounded. It was the same 1996 red Chevrolet Impala the defendant had been driving on February 15, 2007.

An inventory of the vehicle yielded an additional $8,158 in U.S. currency, a cellular telephone, and a Compaq laptop computer.

In total, the defendant is accountable for 577 grams of a mixture and substance containing 185 grams of actual methamphetamine. In addition, the defendant possessed a total of $16,002 in U.S. currency, which is believed to be drug proceeds. According to the case agent, in bulk, 500 grams of methamphetamine is sold for anywhere from $8,000 to $12,000. Based on this information, at the most conservative rate, l gram of methamphetamine is sold for $24. Thus, the $16,002 in U.S. currency possessed by the defendant is equal to approximately 650 grams of a mixture and substance of methamphetamine. Therefore, the defendant is accountable for 185 grams of methamphetamine actual from the two drug seizures on July 20, 2006, and February 15, 2007, as well as 650 grams of a mixture and substance containing methamphetamine which was converted from U.S. currency seized on the defendant.

(PSR ¶¶ 10-20.)

### **Ineffective Assistance of Counsel**

Tinoco claims that he received ineffective assistance when his counsel failed to file a motion to suppress the evidence found during illegal searches of his vehicle. Respondent contends this ineffective assistance of counsel claim is nothing more than a thinly veiled claim that his Fourth Amendment rights were violated. Respondent relies upon *Tollett v. Henderson*, 411 U.S. 258, 267

(1973) for the proposition that Petitioner's guilty plea waived his Fourth Amendment claims. *Tollett* teaches that when a criminal defendant pleads guilty on the advice of counsel, he is not automatically entitled to collateral relief on proof of an underlying constitutional violation. *Id*. The reviewing court must focus on the nature of the advice and the voluntariness of the plea. *Id*. The movant has the burden to prove that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Id*. (quoting *McMann v. Richardson*, 397 U.S. 742, 771 (1970)).

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. U.S. CONST. art. VI. To merit relief pursuant to § 2255 on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 691. To prevail on the deficiency component of this test, he must identify the acts or omissions that were not the result of reasonable professional judgment. *Id*. at 690. The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the

4

plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. A court need not address both components if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 691. To prevail on the deficiency component of this test, Tinoco must identify the acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

Tinoco argues that absent (1) consent to search his car or the bags found in the car, (2) exigent circumstances, (3) probable cause, or (4) plain view, the searches were illegal, and but for the searches, he would not have been charged with a federal drug crime. He asserts that, had counsel filed a motion, the evidence would have been suppressed.

A counsel's failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986). Defense counsel "is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion." *United States v. Aulet,* 618 F.2d 182, 187-88 (2d Cir. 1980). Tinoco's claim that the searches of his vehicle on July 20, 2006, and February 15, 2007, were illegal is without merit. On both occasions, the searches were made incident to his arrest and were legal at the time of the arrests. *New York v. Belton*, 453 U.S. 454 (1981). The United States Supreme Court recently set aside at least part of its prior long-standing and well-established holding in *Belton*. *See Arizona v.Gant*, ___ U.S. ___, 129 S.Ct 1710 (2009). However, counsel is not expected or required to foresee future developments in the law. *See Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) (holding that there is no general duty on the part of defense counsel to

anticipate changes in the law). "Clairvoyance is not a required attribute of effective representation." *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981).

Tinoco pled guilty on March 18, 2008. The United States Supreme Court did not decide *Gant* until April 21, 2009 – over a year after the plea and months after Tinoco's direct appeal was dismissed. Counsel cannot have been deficient for failing to file a meritless motion. Moreover, the question is not whether a court would retrospectively consider whether counsel's advice not to challenge the evidence and to plead guilty was right or wrong, but rather, whether that advice was within the range of competence demanded of attorneys in criminal cases. *McMann*, 397 U.S. at 770-771. Given the state of the law at the time of Petitioner's arrest and legal proceedings, the Court is convinced that his counsel's advice was within the required range and that counsel's performance did not render Petitioner's guilty plea involuntary. The Court need not address the prejudice prong because Petitioner has failed to show that his counsel's performance was constitutionally deficient for failing to file a motion to suppress the fruits of the searches made incident to his arrests.

## Recommendation

Petitioner has not raised a genuine issue of material fact with respect to his claim of ineffective assistance of counsel. Accordingly, an evidentiary hearing is not required. The record conclusively shows that Tinoco is not entitled to relief. The Court recommends that the District Court deny with prejudice Petitioner's amended motion brought pursuant to 28 U.S.C. § 2255.

SO RECOMMENDED, April 14, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# **INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).